768 So.2d 298 (2000)
Patrick C. HAMILTON
v.
AAI VENTURES, L.L.C. Insulation Sales & Service, Inc., Vic Reno and V.J. Reno.
No. 99 CA 1849.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*300 Robert J. Burns, Jr., Baton Rouge, Counsel for Plaintiff/2nd Appellant, Patrick C. Hamilton.
Steven E. Sanders, Baton Rouge, Counsel for Defendants/1st Appellants, AAI Ventures, L.L.C. and Insulation Sales & Service, Inc., Vic Reno and V.J. Reno.
Before: LeBLANC and KUHN, JJ., and GRANT,[1] J. Pro Tem.
LeBLANC, J.
This appeal is from a district court judgment in favor of plaintiff, Patrick C. Hamilton (Hamilton), and against defendants, AAI Ventures, L.L.C. (AAI) and Insulation Sales and Service, Inc. (ISS). Vic and V.J. Reno, additional named defendants, were dismissed. AAI and ISS have appealed, and Hamilton has answered.

FACTS AND PROCEDURAL HISTORY
ISS, a large commercial insulation company, is a wholly owned subsidiary of R-Square Investments, Inc. (R-Square). R-Square shareholders include Vic, V.J., and James B. Reno. In 1993, the Renos and others formed AAI as a limited liability company. At various times AAI members included ISS, Winter Environmental, Allain Contractors, and Merit Environmental Services, Inc., with ISS being the majority interest holder at all times. AAI was formed in hopes of performing asbestos abatement work at the casino in New Orleans, and in 1994, was indeed awarded the asbestos subcontract for the casino project.
On September 13, 1994, AAI, as evidenced by the authorized signature of V.J. Reno, and Hamilton entered into a professional services agreement. Hamilton was obligated to provide general management services to AAI in matters relating to the asbestos subcontract. Hamilton was to be paid for services he provided, plus expenses. In addition, the agreement included the following provision:
c. The parties agree in principle that an incentive in addition to the amount set forth above in paragraph a. shall be due Hamilton depending upon his performance. The parties shall agree on such incentive arrange [sic] within thirty (30) days of *301 the execution of the [asbestos] subcontract.
No agreement concerning the incentive payment was reached; however, in spite of the failure to agree, Hamilton continued to perform professional services for AAI. Hamilton attempted to discuss the incentive payment with individuals associated with AAI on several occasions; however, these attempts were unsuccessful. The asbestos work was completed within the time allotted under the subcontract, at a profit to AAI.
Hamilton sued, naming as defendants AAI, ISS, Vic Reno and V.J. Reno. Trial was ultimately held, after which the district court held in favor of Hamilton, finding the contract binding and an incentive payment due Hamilton. The court awarded Hamilton $25,000.00, based on a breach of contract claim, rejecting plaintiff's other claims of enrichment without cause, detrimental reliance, and fraudulent inducement. AAI and ISS were held to be solidarily liable; Vic and V .J. Reno were dismissed.
AAI and ISS appeal, arguing the district court erred: 1) in finding the parties intended Hamilton to receive an incentive payment; 2) in awarding $25,000.00 as the amount of the incentive payment due; and 3) in casting ISS in judgment. Hamilton answered the appeal, asserting: 1) the court erred in dismissing Vic and V.J. Reno; 2) the amount of the award was too low; 3) attorney's fees should have been awarded.

THE AWARD
AAI and ISS assert the district court erred in finding an incentive payment due. We disagree. As stated by the court in its written reasons, "[t]he contract clearly states that the parties agree an incentive payment shall be due to Hamilton. The `shall be due' language is unequivocal." This finding by the district court is reviewed using the manifest error-clearly wrong standard, which authorizes us to reverse a district court's factual finding only if we find from the record that a reasonable factual basis does not exist for the finding of the district court and that the record establishes that the finding is clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
The district court heard testimony from Hamilton that he entered into the contract with AAI with the understanding that he would be paid a salary plus a bonus. Jerry Householder, an expert in the field of Construction Management and Administration, stated a bonus payment, based on the profitability of the project, was the standard in the industry. Even V.J. Reno, who signed the contract with Hamilton for AAI, testified that although he did not envision a specific bonus payment to Hamilton on the day the contract was signed, he did make bonus payments to individuals at the end of a project. Thus, there was a reasonable factual basis in the record for this finding of the court. Moreover, we do not find this holding to be clearly wrong.
Concerning the amount of the award, we likewise find no error. The district court heard testimony that two other individuals involved with this project were paid $20,000.00 and $25,000.00 respectively as bonus payments. Those individuals, like Hamilton, were also highly involved, on a day-to-day basis, with this limited duration project. The amount of the award to Hamilton, $25,000.00, is not abusive and is within the wide discretion of the court. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). These assignments are without merit.

SOLIDARY LIABILITY
The district court held ISS and AAI solidarily liable to Hamilton. However, ISS argues the district court erred in holding it liable, as Hamilton contracted with AAI and ISS is merely a member of AAI, a limited liability company. In its reasons *302 for judgment, the district court stated "AAI was a shell corporation with no employees nor capital.... ISS is a shareholder of AAI." Based on this, the court held ISS was liable to Hamilton for the unpaid bonus contracted between Hamilton and AAI.
AAI is a limited liability company, organized pursuant to the statutory scheme set up in Louisiana Revised Statutes 12:1301, et seq. A limited liability company offers, among other benefits, a company's members the corporate benefit of limited liability. Louisiana R.S. 12:1320 B, concerning liability to third parties between and among members of a limited liability company, states:
Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
Pursuant to the governing statute, ISS, as a member of AAI, cannot be held liable for the debts or obligations of AAI. However, applying the jurisprudence applicable to limited corporate liability, we note there are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation, whereby the court may ignore the corporate fiction and hold the individual members or member liable. Riggins v. Dixie Shoring Company, Inc., 590 So.2d 1164, 1168 (La.1991). Louisiana courts have allowed the piercing of the corporate veil under only two exceptional circumstances, namely where the shareholders acting through the corporation commit fraud or deceit on a third party and where the shareholders have failed to conduct the business on a corporate footing, disregarding the corporate entity to such extent that they and it become indistinguishable. McDonough Marine Service v. Doucet, 95-2087, p. 5 (La.App. 1 Cir.6/28/96), 694 So.2d 305, 308.
Such a failure can occur if the shareholder disregarded the corporate formalities to such an extent that the shareholder and the corporation became indistinguishable, or such unity existed that separate individualities ceased and the corporation was operated as the "alter ego" of the shareholder. See Riggins, 590 So.2d at 1168. Indicia of such disregard include commingling of corporate and shareholder funds, failing to follow statutory formalities for incorporating and transacting corporate affairs, undercapitalization, failing to maintain separate bank accounts and bookkeeping records, and failing to hold regular shareholder and director meetings. Riggins, 590 So.2d at 1168. The determination of whether to allow piercing of the corporate veil is made by considering the totality of the circumstances. Riggins, 590 So.2d at 1169.
In most of the cases in which Louisiana courts have allowed a piercing of the corporate veil, there exists one majority stockholder, either an individual or a corporation, which is found to be operating the corporation as its "alter ego" or as an instrumentality of the shareholder. See Jones v. Briley, 593 So.2d 391, 395 (La. App. 1 Cir.1991). The legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation. Green v. Champion Insurance Company, 577 So.2d 249, 257 (La.App. 1 Cir. 1991), writ denied, 580 So.2d 668 (1991). If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability. In such instance, the former corporation is merely an alter ego or a business conduit of the latter. When corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity. Id.
It is clear that courts can pierce the veil of a corporation in order to reach the "alter egos" of the corporate defendant. This is especially true where the corporations constitute a single business. Courts have been unwilling to allow affiliated corporations *303 that are not directly involved to escape liability simply because of the business fragmentation. Where a single corporation has been fragmented into branches that are separately incorporated and are managed by a dominant or parent entity, or have interlocking directorates, the courts have held the dominant or parent corporation liable for the obligations of its branches whenever justice requires protection of the rights of third persons. Id.
In its written reasons, the district court, after finding a breach of contract by AAI and apparently relying on a finding of undercapitalization of AAI, pierced the veil and held ISS, a member of the limited liability company, liable. This finding is subject to the manifest error-clearly wrong standard of Stobart. See McDonough, 95-2087 at 8, 694 So.2d at 309-10. Stated another way, the district court's finding that ISS was liable for the debts of AAI, based on AAI's breach of contract, can be reversed only if this court finds from the record that a reasonable factual basis does not exist for the finding, and the record establishes that the finding is clearly wrong/manifestly erroneous.
After a thorough review of the record, we find that a reasonable factual basis exists for the district court's imposition of liability upon ISS. Vic Reno testified that AAI was formed for a single purpose, performing asbestos removal in the New Orleans casino project. Before the casino project, AAI had never performed asbestos abatement. An organizational chart of R-Square and its affiliate companies illustrates the overlap of the Renos and ISS in the total corporate existence and the disregard for separate corporate entities. Individuals associated with the casino project testified they were unsure of co-workers job titles or record employers, employees of one organization were housed at the offices of other organizations, workers on the casino project were employees of various businesses, including AAI, ISS, and AKT (owned in part by the Renos), and AAI had no employees (AAI's accounting was handled by employees of ISS).
In light of this testimony, we cannot say the district court was clearly wrong in "piercing the corporate veil" and finding ISS liable for the breach of contract debt of AAI. Based on a totality of the circumstances, the district court could have found that there was a corporation financing a limited liability company, inadequate capitalization ("thin incorporation"), common employees, services rendered by the employees of one corporation on behalf of another corporation, common offices, and centralized accounting. See Green, 577 So.2d at 257-258. Accordingly, we find no error with the judgment against ISS. This assignment is without merit.

THE DISMISSAL OF THE RENOS
Hamilton asserts the district court erred in dismissing Vic and V .J. Reno. We disagree. The district court dismissed the Renos, finding Hamilton failed to bear his burden of proving his claims of unjust enrichment, detrimental reliance, or fraudulent acts by the Renos. After reviewing the entire record in the instant case, we find that there is a reasonable basis for the district court's ruling. There was no testimony by Hamilton accusing the Renos of outright fraud, nor do we find overwhelming persuasive support for Hamilton's claims of detrimental reliance or the Renos' alleged unjust enrichment. Accordingly, the district court's finding cannot be manifestly erroneous or clearly wrong. This assignment is without merit.

ATTORNEY'S FEES
Lastly, Hamilton sought an award for the legal costs that he incurred at the trial level. Louisiana law does not allow an award of attorney fees, except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 763 (La.1985). Hamilton has not presented any statutory or contractual *304 authority for an award of attorney fees in the instant lawsuit; nor are we aware of the existence of such a statutory or contractual basis in the instant matter. This assignment has no merit.

CONCLUSION
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellant, AAI and ISS, and the appellee, Hamilton, in equal amounts.
AFFIRMED.
NOTES
[1] Judge Jo Ellen Grant of the 24th Judicial District Court serving Pro Tempore by special appointment of the Louisiana Supreme Court.