BROWN, Chief Judge.
11 This, case arises out of a two-vehicle accident that occurred on March 14, 2009, at the intersection of Eagle Drive and the 1-20 service road in Ruston, Louisiana. At the time of the accident, plaintiff, Ouida Passon, was driving westbound on the service road and defendant, Lounita Fields, was driving northbound on Eagle Drive. When she got to the intersection, Mrs. Fields disregarded a posted stop sign and pulled out directly in front of oncoming traffic. Mrs. Passon was unable to stop in time, and her vehicle struck the Fields car. On March 12, 2010, plaintiffs, Ouida and David Passon, filed the instant suit against Mrs. Fields and her insurer, State Farm Mutual Automobile Insurance Company, the City of Ruston (“the City”), the Lincoln Parish Police Jury (“the Parish”), and the Louisiana Department' of Transportation and Development (“the DOTD”). Plaintiffs settled with Mrs. Fields and State Farm, who were dismissed from the lawsuit.
On June 3, 2014, the DOTD and the City filed a joint motion for summary judgment, asserting that plaintiffs had no evidence to support their claims against defendants. Plaintiffs filed an opposition brief, and the Parish filed a separate motion for summary judgment on November 17, 2014, urging that because it had no custody or control over the intersection where the accident occurred, had not designed, constructed, controlled, maintained or operated the roads making up the intersection, and had not designed, installed or maintained the traffic control devices at the intersection, summary judgment in its favor was warranted. On November 18, 2014, the DOTD filed a motion to strike plaintiffs’ opposition memo as |2untimely, and two exhibits offered by plaintiffs in support of their- memo: an affidavit of expert, Vernon Tekell, and several newspaper articles.
A hearing was' held on November 20, 2014, and the matter was taken under advisement by the trial court. On January 30, 2015, the trial court issued written reasons and a judgment granting in part the motion to strike and granting summary judgment in favor of all defendants. It is from this judgment that plaintiffs have appealed.

Discussion

Evidentiary Rulings

In response to plaintiffs’ memorandum filed in opposition to their motion for summary judgment, the DOTD and City filed a motion to strike the affidavit of Dean Tekell, plaintiffs’ expert, newspaper articles (on accidents that have occurred at the intersection at issue in this case since the accident) attached to the opposition memorandum, and all references in the opposition memorandum and Tekell’s affidavit that refer to information in the newspaper articles and/or subsequent remedial measures taken by any of the defendants. In his written ruling, the trial judge noted that plaintiffs’ counsel offered evidence of subsequent remedial measures not for the purpose of proving ownership of the intersection in question, - but to show that the defendants had notice of the allegedly dangerous condition at the intersection, something prohibited by law. •
While a newspaper article is admissible simply to prove that the article exists, *649when a party submits a newspaper article to prove the truth of the matter asserted, the evidence is hearsay, and the court must find the |sevidence inadmissible. State v. Harper, 93-2682 (La.11/30/94), 646 So.2d 338; Abadie v. Metropolitan Life Ins. Co., 00-344 (La.App. 5th Cir.03/28/01), 784 So.2d 46, writs denied, 01-1533, 01-1534 (La.12/14/01), 804 So.2d 642, writs denied, 01-1543, 01-1544, 01-1629 (La.12/14/01), 804 So.2d 643, writs denied, 01-1853, 01-1931 (12/14/01), 804 So.2d 644.
La. C.E. article 407 provides:
In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur,- evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.
The trial court is granted broad discretion in its evidentiary rulings which will not be disturbed on appeal absent a clear abuse of discretion. Allums v. Parish of Lincoln, 44,304 (La.App.2d Cir.06/10/09), 15 So.3d 1117, writ denied, 09-1938 (La.11/20/09), 25 So.3d 803; Crisler v. Paige One, Inc., 42,563 (La.App.2d Cir. 01/09/08), 974 So.2d 125. The prohibition against evidence of subsequent remedial measures is designed to bring within the scope of the rule any change, repair or precaution subsequent to an accident. Northern Assurance Co. v. Louisiana Power & Light Co., 580 So.2d 351 (La.1991); Allums, supra. The prohibition covers measures taken after an event, such as post-accident repairs, installation of safety devices, changes in design, the removal of dangerous conditions, changes in procedure, the dismissal of an employee charged with causing an accident, changes in regulations, and changes in labels or instructions. Id.
I/The trial court did allow the articles to be submitted, although solely for the purpose of showing that they had been published. Likewise, there were only two portions of Tekell’s affidavit that were stricken: one that relied upon remedial measures taken by the DOTD post-accident, and one that relied upon information contained in the above-mentioned newspaper articles. The trial court did not err in its evidentiary rulings in this case. See Allums, supra (evidence that an advisory speed limit sigu at a curve placed by the parish post-accident was inadmissible evidence, of subsequent remedial measures); Tilden v. Blanca, L.L.C., 12-1311 (La.App. 4th Cir.06/26/13), 119 So.3d 962 (evidence that additional rugs had been placed in restaurant after accident was inadmissible evidence of subsequent remedial measures); Daigle v. Parish of Jefferson, 08-1310 (La.App. 5th Cir.12/08/09), 30 So.3d 55, writ denied, 10-0044 (La.03/26/10), 29 So.3d 1262 (evidence of trimmed foliage around stop sign post-accident was inadmissible as evidence of subsequent remedial measure); Ibieta v. Star Casino, Inc., 98-0314 (La.App. 4th Cir.10/07/98), 720 So.2d 143, writ denied, 98-2806 (La.01/08/99), 735 So.2d 635 (evidence that signage and pavement markings on private road were changed after accident was inadmissible evidence of subsequent remedial measures); and Brown v. Diamond Shamrock, Inc., 95-1172 (La.App. 3d Cir.03/20/96), 671 So.2d 1049 (photographs showing car wash floor in clean condition when accident happened while floor was covered in algae was inadmissible evidence of subsequent remedial measures).
lü Summary Judgment Rulings
In determining whether summary judgment is appropriate, appellate courts re*650view evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smitko v. Gulf S. Shrimp, Inc., 11-2566 (La.07/02/12), 94 So.3d 750; Monroe Surgical Hospital, LLC v. St. Francis Medical Center, Inc., 49,600 (La.App.2d Cir.08/21/14), 147 So.3d 1234, writ denied, 14-1991 (La.11/21/14), 160 So.3d 975; Rain and Hail, L.L.C. v. Davis, 49,813 (La.App.2d Cir.05/20/15), 165 So.3d 1204. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together -with the affidavits, if any, admitted for the purposes of the motion for summary judgment/show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2); Rain and Hail, L.L.C., supra. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. La. C.C.P. art. 967(B); Luther, v. IOM Co. LLC, 13-0353 (La. 10/15/13), 130 So.3d 817; Brooks v. Transamerica Financial Advisors, 45,833 (La.App.2d Cir.02/02/11), 57 So.3d 1153.
Louisiana law allows plaintiffs to pursue tort claims against public entities such as the DOTD, the Parish and the City based on La. C.C. arts. 2315 and 2317 and La. R.S. 9:2800. Henderson v. Nissan Motor Corp., 03-0606, (La.02/06/04), 869 So.2d 62; Skulich v. Fuller, 46,733 (La.App.2d Cir.12/14/11), 82 So.3d 467. Regardless of the theory of recovery, the [ ilegal analysis is the same. Plaintiffs must show that: (1) the public entity had custody of the thing that caused the plaintiffs injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiffs injuries. Fontenot v. Patterson Ins., 09-0669 (La.10/20/09), 23 So.3d 259; Netecke v. State ex rel. DOTD, 98-1182, 98-1197 (La.10/19/99), 747 So.2d 489; Skulich, supra. Failure to establish any one of these elements is fatal to plaintiffs’ claim. Id.
In its motion for summary judgment, the Parish asserted, inter alia, that the roads, intersection and traffic control devices were not and had never been in their care, custody or control. In support of its motion, the Parish attached the affidavits of long-time police jury administrative ’ employees, Administrator Courtney Hall and Road Supervisor. Jerry Doss. In their affidavits, both Hall and Doss affirmed that neither Eagle Drive nor the I-20 North Service Road, more specifically the intersection of these two roads, which is the location of the accident at issue in this case, have,ever been included in the inventory of roads and bridges that make up the Lincoln Parish Road System. They further attested that the roads were not designed, constructed, controlled, maintained or operated by the police jury, and the traffic control devices controlling the flow of traffic into and through the intersection at issue were not designed, installed or maintained by the police jury. This was not controverted by plaintiffs. Therefore, wejjfind no error in that part of the trial court’s judgment granting the Parish’s motion for summary judgment. See Kelly v. City of Bossier City, 41,705 (La.App,2d Cir.12/13/06), 945 So.2d 229.
The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty owed is a question of law. Bufkin v. Felipe’s Louisiana, LLC, 14-0288 (La.10/15/14), 171 So.3d 851; Milbert v. *651Answering Bureau, Inc., 13-0022 (La.06/28/13), 120 So.3d 678. Whether a legal duty is owed can be decided on summary judgment. Bufkin, supra; Chesney v. Entergy Louisiana, L.L.C., 49,816 (La.App.2d Cir.05/27/15), 166 So.3d 1204. Public entities such as the DOTD and the City have an obligation to motorists to maintain their highways and roads in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. Netecke, supra; Skulich, supra. Included within this general duty is the obligation to maintain appropriate signs and traffic control signals along the roadways. Lee v. State, DOTD, 97-0350 (La.10/21/97), 701 So.2d 676; Howard v. Derokey, 98-0893 (La.App. 4th Cir.02/10/99), 729 So.2d 654. However, the duty owed by DOTD does not include the obligation to protect a plaintiff against harm that would not have occurred but for the grossly negligent operation of a motor vehicle. Jacques v. State, DOTD, 03-2226 (La.App. 1st Cir.09/17/04), 905 So.2d 294, writ denied, 04-3013 (La.02/18/05), 896 So.2d 36. DOTD is not a guarantor of the safety of all travelers and cannot be held responsible for all injuries resulting from any risk posed by a roadway or its appurtenances, only those caused by an unreasonable risk of harm to others. Lee, supra.
In support of their motion for summary judgment, the DOTD and City attached the affidavit of David Hall, an expert in civil engineering. Hall was retained by defendants to investigate the facts and circumstances surrounding the accident, specifically, whether the traffic control devices present on Eagle Drive at or near its intersection with the 1-20 frontage road in Ruston, Louisiana, were in compliance with the Manual on Uniform Traffic Control Devices (“MUTCD”), and whether there was sufficient sight distance for motorists traveling along the route to be able to safely observe the posted traffic signage/warning devices and oncoming traffic.
Hall inspected the accident site and surrounding areas of Eagle Drive and the westbound 1-20 frontage road, and conducted line of sight, time/distance and accident reconstruction evaluations for both roadways. Hall also reviewed a number of records, including: (1) the crash report for the March 14, 2009, accident; (2) a September 23, 2013, field inspection; (3) Lounita Fields’ deposition; (4) plaintiffs’ petition for damages; (5) vehicle specifications for the two vehicles involved in the accident; (6) the construction' plans for City Project No. 0106/State Project No. 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; (7) the construction plans for City Project No. 105/State Project 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; (8) the February 10, 2014, survey of the accident scene; (9) the 2004 edition of the American Association of State Highways and Transportation Officials (“AASHTO”) Geometric Design of Highways and Streets; and (10) the 2003 edition of the MUTCD.
[9Based upon his evaluation of both Eagle Drive and the 1-20 frontage road and review of the documents listed above, Hall opined that, at the time of the accident, there were no abnormalities or design deficiencies on either roadway that were in violation or derogation of any standards or recommendations set forth by AASHTO. Specifically, the area of roadway traveled upon by Mrs. Passon and Mrs. Fields was not unreasonably dangerous.
In his affidavit Hall further stated that the traffic control devices posted and present at the time of the accident on both Eagle Drive and the 1-20 frontage road were in compliance with the MUTCD. Based upon his evaluations, Hall opined that there was sufficient line of sight available for Mrs. Fields to be able to observe *652the various traffic control devices posted and present along- the route. Hall further found that there was sufficient stopping sight distance available for Mrs. Fields to be able to observe the approaching intersection and any oncoming traffic and safely negotiate the intersection.
.According to Hall, Mrs. Fields failed to yield the right-of-way to Mrs. Passon, who was westbound on the 1-20 frontage road, even though Mrs. Passon was visible to Mrs. Fields; this failure to .yield was the cause of the accident. ...
Plaintiffs attached to - their summary judgment opposition the affidavit of their expert witness,. Vernon “Dean” Tekell, a civil engineer. To prepare his affidavit, Tekell reviewed:. (1) the plans of Proposed 1-20 Corridor Transportation Improvements State Project No. 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 U.S. 167 to. LA |in33 (North Frontage Road); (2) the as-built plans of Proposed 1-20 Corridor Transportation Improvements State Project No. 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 1 — 20 Over-, pass Bridge-(from North to South. Frontage Road); (3) the Design Exceptions for State Project No. 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; (4) Chapter 4C of the 2003 edition of the MUTCD; (5) the DOTD’s Engineering Directives ánd Standards Manual (“EDSM”) No. VI.3.1.6-Traffic Signals; (6) projected traffic volumes and movements; (7) traffic volumes that existed at the time of plan preparation and project construction; (8) adjacent private sector development underway at the time of plan preparation and project construction; (9) the geometry of the intersection; (10) design speeds; (11) intersection leyels of service; and (12) vehicle delays and queues, that should have been anticipated.
According to Tekell, the installation of a traffic control signal at the intersection was necessary at the time the intersection opened in 2008 to prevent the intersection from being unreasonably dangerous and inefficient. Tekell also stated that the DOTD’s published methodology for the erection of traffic signals predicted that traffic signal control of the intersection was appropriate in the absence of any crash history.
As noted above, in the affidavit filed by the DOTD and City, Hall stated that there were no design deficiencies or abnormalities in the roadways in violation of applicable AASHTO standards. Hall further opined that the traffic control devices posted at the time of the accident were in compliance with MUTCD standards, there was sufficient line of sight available for Mrs. Field to be able to see the posted traffic control devices, In and there was sufficient stopping sight distance for Mrs. Fields to be able to observe and navigate safely the upcoming intersection.
The only assertions made by plaintiffs’ expert, Dean Tekell, in his opposing affidavit were that the installation of a traffic control device/signal was necessary at the time the intersection was opened in 2008 to prevent it from being unreasonably dangerous and inefficient, and that the placement of traffic signals at the intersection even without any crash history was appropriate pursuant to DOTD’s own published methodology. These two conclusions, without more, such as a reference to a specific provision, standard or MUTCD regulation allegedly violated by defendants, do not rebut or controvert the detailed, information set forth in defense expert’s affidavit. Plaintiffs’ expert did not personally inspect the intersection, and he apparently did not even factor the fault of Mrs. Fields into his opinion.
Once defendants came forward with evidence in support of their motion, the burden shifted to plaintiffs to produce evidence showing a genuine issue of fact as to whether defendants had a duty to more, such as the placement of additional traffic devices or signals at the intersection. As *653noted by this court in Skulich, 82 So.3d at 471, it is well settled that compliance with the MUTCD, which is mandated by La. R.S. 32:235, is prima facie proof of the DOTD’s absence of fault when an injured motorist attempts to predicate the DOTD’s liability on improper signalization or road markings. This proof is sufficient when it is not rebutted or contradicted. Lain v. Chapa, 48,000 (La.App.2d Cir.05/15/13), 114 So.3d 563, writs denied, 13-1753, 13-1759 (La.11/01/13), 125 So.3d 433, 434; Skulich, supra.
Plaintiffs failed to establish that the intersection, the. two roadways, or the traffic control signage that existed at the time of the accident presented an unreasonable risk of harm to the motoring public. The trial court did not err in granting summary judgment in favor of defendants, the DOTD and City of Ruston.

Conclusion

For the reasons set forth above, the judgment of the trial court in favor of defendants, the City of Ruston, the Lincoln Parish Police Jury, and the Louisiana Department of Transportation and Development, is affirmed. Costs are assessed to plaintiffs, Ouida and David Passon.